N. E. BARLOW,

*Plaintiff and Respondent,*

vs.

E. M. MAKEEFF and CHRIS HAUGEN,

*Defendants and Appellants.*

No. 2673; June 21st, 1955; 284 Pac. (2d) 1093)

For the defendants and appellants the cause was submitted upon the brief and also oral argument of Chester S. Jones and Richard S. Dumbrill of Newcastle, Wyoming.

For the plaintiff and respondent the cause was submitted upon the brief of Clarence G. Cypreansen and R. N. Ogden, both of Casper, Wyoming, and oral argument by Mr. Ogden.

## OPINION

BLUME, Justice.

In this case the defendants, under the partnership name of Williston Construction Company, a nonresident employer, entered into a contract with the Hot Springs Rural Electric Cooperative Association to construct about 324 miles of R.E.A. lines in Hot Springs county, Wyoming. The contract price was in excess of $400,000. In order to comply with the statutes relating to workmen's compensation, the Williston Construction Company, as a nonresident employer, gave a bond to the State of Wyoming for $500 (called Performance Bond), pursuant to Chapter 143, § 105, Session Laws of Wyoming, 1951, and also gave a bond for $7,500 pursuant to Chapter 143, § 106, Session Laws of Wyoming, 1951. The partners desired to sublet part of the work and entered into a contract dated February 15, 1952, subletting the construction of approximately 50 miles of R.E.A. lines in Hot Springs county and adjacent counties to the plaintiff, N. E. Barlow. The subcontractor was to receive 92½% of the unit labor price and the Williston Construction Company was to

receive 7½%. Barlow also was a nonresident of the state, but he did not give any bond pursuant to the statutes heretofore mentioned relating to workmen's compensation, nor did he deposit any money with the state. Instead of doing so, the parties in their contract made special provisions as to the payments to be made for workmen's compensation. They provided in their contract as follows:

"4. It is further mutually understood and agreed that the Second Party shall pay from his 92½% of the unit labor cost any public liability or property damage insurance that he might carry, withholding taxes on the employees which are employed by the Second Party in this construction, the Social Security Tax on the employees employed by the Second Party, Second Party shall pay his proportionate share of any Workmen's Compensation on employees work by the Second Party, Unemployment Compensation shall be paid by the Second Party on any employees that he is working on construction and will pay his proportionate share of any cost to any local union in accordance with their contract with the First Party."

"5. It is mutually understood and agreed between the Parties hereto that the First Party shall procure and pay for a Performance Bond and that the Second Party shall pay no part thereof. Any additional or other taxes assessed on the labor employed by the Second Party shall be paid by the Second Party."

N. E. Barlow, as subcontractor, performed the work undertaken by him and completed it on October 15, 1952. There was due to him at that time for the performance of his part of the contract the sum of $1,-362.58. When that was not paid, he commenced this action on August 3, 1953, against the defendants to recover the amount so due him. On March 22, 1954, the defendants filed an amended answer and a cross petition, alleging in paragraph 3 of the cross petition as follows:

"That the Plaintiff did certain work under said Sub-contract Agreement and received certain payments as the work progressed. His men were placed upon the Workmen's Compensation report of Defendants. That this was done under agreement of the parties for the purpose of avoiding the extra work involved in getting a sub-contract approved by the R.E.A. at Washington, D. C. That Plaintiff paid his own men but their names were entered on the books of the Defendants for the purpose of complying with the responsibility of Defendants as original contractors and for paying Workmen's Compensation assessments."

They further alleged that while the plaintiff was working under the above agreement, he employed four men who were injured on the work and therefore were eligible and did draw payments from the Wyoming Workmen's Compensation Fund; that the names of these men and the dates of the injuries and the amounts paid to them from the workmen's compensation account are as follows:

Morton E. Butts. Injured May 24, 1952. Paid Amount of $7,159.95.

Clarence Wilcox. Injured May 29, 1952. Paid amount of $12.50.

Ted Myklebust. Injured April 20, 1952. Paid amount of $6.50.

William Frederick Strite. Injured July 24, 1952. Paid amount of $203.35.

They further alleged that the total amount of charges against the workmen's compensation account was $7,-382.30, of which plaintiff paid the sum of $464.23. Deducting the amount due to plaintiff under the contract in the sum of $1,362.58, left due from Barlow to the defendants the sum of $5,555.49 for which defendants prayed judgment. The action herein accordingly relates solely to the question as to the liability of the respective parties for the sums due for workmen's compensation to injured employees.

It appears herein that during the time from February 15 to October 15 the defendants took care of the amounts necessary to be paid to the compensation fund and charged to the plaintiff 3% of the earnings of laborers employed by him. At the time when the parties entered into their contract, the defendants had on deposit with the treasurer of this state, as part of their workmen's compensation fund, the sum of $2,052.94, so that they were not required to pay into their fund any additional amount until August 1952, after the injuries sustained by plaintiff's employees. As of February 1, 1954, there was due from defendants to the workmen's compensation fund the sum of $5,249.68. Apparently this amount has not been paid by the defendants. Whether or not it has been paid by the insurance company under its bond of $7500 does not appear herein.

A jury was demanded by the plaintiff Barlow. After the trial of the case, the jury returned a judgment in favor of the plaintiff in the sum of $1,362.58, being the amount demanded by him. Special interrogatories were submitted to the jury. Interrogatory 2 was as follows:

"Under the Sub-Contract Agreement Plaintiff's Exhibit No. 1, did the parties intend that the Plaintiff Barlow should pay the Defendants for the Workmen's Compensation assessments charged against the Defendants, Williston Construction Company's, Wyoming Workmen's Compensation account as a result of injuries to Plaintiff Barlow's employees who were carried on Defendants' Workmen's Compensation account?"

The jury answered, "No."

A motion was made by the defendants for a judgment in their favor notwithstanding the verdict. This motion was overruled and on April 5, 1954, the court entered judgment in favor of the plaintiff in the sum of $1,362.58 together with interest and costs. From

that judgment, the defendants herein have appealed to this court. Other pertinent facts will be mentioned hereafter.

Many states have statutes covering the relationship between a principal contractor and a subcontractor in so far as it relates to workmen's compensation. See 1 Larson, Workmen's Compensation Law, § 49. The statutes of the State of Washington, for instance, provide in § 51.12.070, Revised Code of Washington, 1952, as follows:

"The contractor and any subcontractor shall be subject to the provisions of this title and the person, firm, or corporation letting the contract shall be entitled to collect from the contractor the full amount payable to the accident fund and medical aid fund, and the contractor in turn shall be entitled to collect from the subcontractor his proportionate amount of the payment." Our statutes are wholly silent on the subject. In this case both the contractor and the subcontractor were nonresidents. Does our statute contemplate, in order that the workmen's compensation fund may have double security, that both of them should comply with the provisions of Chapter 143, §§ 105, 106, Session Laws of Wyoming, 1951, relating to deposits of money and the giving of bonds on the part of nonresidents? The undisputed evidence in this case shows that the plaintiff herein employed the injured employees heretofore mentioned. He was, therefore, an employer as much as the defendants. But the defendants connived with the plaintiff so as to relieve the latter from complying with the provisions of the statutes above mentioned, and instead, entered into the contract heretofore pointed out. The question therefore fairly arises as to whether or not the contract entered into between the parties was illegal so that neither party should have any relief herein. The legislature should clarify the matter. The point has not been argued and we shall

leave it open for future consideration or for future action by the legislature. For the purposes of this case, we shall consider the contract between the parties hereto to be valid.

Counsel for plaintiff argued in the lower court that since the defendants made reports to the effect that the employees working under the subcontractor were their employees, they are barred from claiming the contrary. As between the state and the employees, the latter were employees of the main contractor. But as already stated the undisputed evidence is that plaintiff hired the injured employees. As between plaintiff and the defendants, they were employees of the former. There is no inconsistency in that connection. The argument of counsel for the plaintiff in connection with this matter was without any merit.

Defendants charged the plaintiff 8½% to take care of workmen's compensation, unemployment compensation, social security tax and payments due to the labor union. The 8½% consisted of the following: 3% for workmen's compensation; 3% for unemployment compensation; 1½% for social security tax and 1% to the labor union. The contract between the parties makes no provision for that charge. Counsel for plaintiff accordingly argue that defendants had no right to make it. The argument is devoid of merit. Plaintiff, in paragraph 4 of the contract of the parties, specifically agreed to take care of and pay the foregoing items, although no specific amount was mentioned. Plaintiff acquiesced in defendants paying these items. That was for his benefit. It relieved him of the burden of doing so. Counsel for plaintiff further argue that defendants deducted 3% of plaintiff's pay roll for workmen's compensation during the time when defendants had ample money in their workmen's compensation fund, so as not to be required to make any

contributions thereto from February to August 1952. Counsel talk about a large profit made by the defendants. But the profit soon turned into a loss. Plaintiff, so far as we can see, made no objection to the deduction of 3% for workmen's compensation, so that the foregoing argument of counsel is without merit. They argue further that in view of the fact that defendants took care of the matter of compensation for injured employees, plaintiff was deprived of the opportunity of defending against the claims of these employees. But that matter at the most would go to the point as to strict or liberal construction of the contract between the parties. The vital question before us is as to what is the meaning of the contract between the parties. On that point counsel for plaintiff are strangely silent.

We must turn then to ascertain the meaning of the contract entered into by the parties in so far as it relates to workmen's compensation. And we must ascertain that meaning in the light of our statutes. In that connection, we must bear in mind the rule stated in 17 C.J.S., § 296, pp. 695 to 698, reading as follows:

"The intention of the parties is to be deduced from the language employed by them, and the terms of the contract, where unambiguous, are conclusive, and the rule making the terms of the contract conclusive where unambiguous is controlling in the absence of averment and proof of mistake, the question being, not what intention may have existed in the minds of the parties, but what intention is expressed by the language used. "In construing and determining the effect of a written contract, the intention of the parties and the meaning are gathered primarily from the contents of the writing itself,  *   *   *."

And 3 Williston on Contracts, Revised Edition, § 610, p. 1752, speaking of contracts reduced to writing states that "though courts say they are seeking the intention of the parties, the assertion is even more emphatic that

this intention can be found only in the expressions of the parties in writing. In effect, therefore, it is not the real intent but the intent expressed or apparent in the writing which is sought."

Mr. John P. Ilsley, an attorney at law, drafted the contract. He gave testimony in this case and apparently construed the meaning of the contract to be somewhat different from the words which were used in the contract.

Paragraph 4 of the contract requires that plaintiff pay his proportionate share of any workmen's compensation. The parties, by their conduct, treated this as relating to the ordinary payments made by an employer each month. Paragraph 5 of the contract provides:

"Any additional or other taxes assessed on the labor employed by the Second Party shall be paid by the Second Party (Plaintiff.)" Technically speaking the sentence is meaningless since no assessments are made on labor under our statutes, but on the earnings of the laboring men. We think we may overlook this technicality and read the sentence as meaning: "Any additional or other taxes assessed on the earnings of laborers employed by the Second Party shall be paid by the Second Party." When so read in the light of our statutes, we think the sentence is unambiguous. It does not say that all workmen's compensation due to plaintiff's laborers must be paid by plaintiff. If that had been the intention, it should have been so stated in the contract. Under the contract as written two factors must exist: (1) An assessment, or at least facts permitting an assessment, and (2) earnings of laborers on which such an assessment can be made. The work undertaken by the plaintiff was completed on October 15, 1952, so that presumably he had no laborers after that time upon whose earnings any assessment could be made. Under the provisions of

Chapter 143, § 18, Session Laws of Wyoming, 1951, every employer who shall commence employment in any extra-hazardous occupation is required to pay for the first year 5% of the money earned by his employees. Under § 22 of the same chapter, the maximum amount that may be assessed against an employer is 5½% of the money earned by his employees. He has the option to pay any overdraft in a lump sum with a discount of 5%. But that is optional with the employer and not compulsory.

We cannot, accordingly, give the defendants the relief they seek herein. We cannot see how, under the terms of the contract herein, plaintiff can be charged with a sum greater than that mentioned in the statute. On the other hand we are unable to see that it would be just for plaintiff to escape payment of sums of money which were legally assessable against him under our statutes. Plaintiff's contract was completed in eight months. We think he should pay 5% of the earnings of his employees for three of these months and 5½% for the remaining five months, counting that from the time that Morton E. Butts was injured. The record shows that 8½% of the earnings of plaintiff's employees amounted to $1,315.33 for the period of eight months. One percent of the pay roll for the eight months is $154.74. Five percent for the eight months would be $773.72; and one-half percent for five months would be $48.35, making a total of $822.07. Plaintiff paid $464.23 of this amount, leaving the sum of $357.84. This amount of $357.83 should be deducted from the judgment herein as of the date thereof and interest should be computed in accordance therewith. With this modification the judgment is affirmed.

Plaintiff filed herein a motion to dismiss the case claiming that the notice of appeal was not served in time. Defendants filed a motion for diminution of the

record. We have deemed it best to dispose of the case on the merits and shall not rule on these motions.

*Modified and affirmed.*

RINER, C. J., and HARNSBERGER, J., concur.

## ON PETITION FOR REHEARING

An application for rehearing was filed in this case and was denied without opinion on October 18, 1955.