KANSAS-NEBRASKA NATURAL GAS COMPANY, INC., A CORPORATION, APPELLEE, v. CITY OF ST. EDWARD, NEBRASKA, A MUNICIPAL CORPORATION, ET AL., APPELLANTS.

91 N. W. 2d 69

Filed June 27, 1958. No. 34374.

*Earl Hasselbalch,* for appellants.

*James D. Conway, Elmer J. Jackson,* and *Cline, Williams, Wright & Johnson,* for appellee.

*Stewart & Stewart* and *Sidner, Lee, Gunderson & Svoboda,* for amicus curiae Nebraska Natural Gas Co.

*Paul J. Gerdes* and *Smith Brothers,* for amicus curiae City of Lexington.

Heard before Simmons, C. J., Carter, Messmore, Yeager, Wenke, and Boslaugh, JJ.

Simmons, C. J.

In this action plaintiff sought a judgment enjoining the defendants from preventing plaintiff putting into effect a rate schedule for the sale of gas to its customers in the defendant city.

The plaintiff is a corporation engaged in the sale of natural gas. The defendants are the city of St. Edward (a city of the second class), its mayor, and councilmen. They will be hereinafter referred to as the defendants.

Issues were made and trial was had based upon a stipulated statement of facts. It contained the following: "That the issues of this case are limited to whether the Court has jurisdiction to grant Plaintiff the injunctive relief prayed for, and if so, then (1) whether the Defendants must regulate Plaintiff's rates under the Statutes of Nebraska and under the terms of Plaintiff's Franchise in the Defendant City, or (2) whether under such Statutes and Franchise, Plaintiff's Franchise constitutes a contract to furnish gas at the rates set out therein for the life of said Franchise."

The trial court "perpetually enjoined" the defendants from preventing the plaintiff putting the proposed rates into effect.

Defendants appeal.

We find generally in favor of the plaintiff but find that it is necessary to reverse the judgment and remand the cause because of the extent of the order perpetually enjoining the defendants from preventing the plaintiff from putting the proposed rates into effect.

On October 2, 1950, the city, pursuant to the authority of section 17-125, R. S. 1943, granted the plaintiff a franchise for a period of 25 years which the plaintiff accepted on October 20, 1950. The ordinance set up a schedule of rates to be charged for natural gas. It will be quoted later herein. In March 1954, the plain-

tiff requested orally (and later in writing) an increase in rates to provide sufficient revenue to earn a fair and reasonable return on its invested capital. This request was supported by data indicating the necessity. Plaintiff requested the enactment of a new franchise ordinance and a supplemental rate ordinance. The defendants failed and refused to act on the proposed rate increase.

A study by an engineering firm was then made and its finding corroborated plaintiff's request. This report was made available to the defendants. On November 1, 1954, plaintiff renewed its request for a rate increase and again the defendants failed and refused to grant it.

This was followed by litigation in the federal courts. See Kansas-Nebraska Natural Gas Co. v. City of St. Edward, 134 F. Supp. 809, and (same title) 234 F. 2d 436.

Following that litigation the plaintiff on July 30, 1956, requested the defendants to exercise the regulatory power vested in them by section 17-125, R. R. S. 1943, and section 17-528.01, R. S. Supp., 1955. (Both original sections are now repealed and as amended are contained in section 17-528.02, R. S. Supp., 1957.) The plaintiff requested the city to adopt the proposed rates. The defendants by resolution on August 3, 1956, denied the request on the ground that the existing ordinance constituted a valid contract for a period of 25 years.

Plaintiff initiated this action on August 23, 1956. It was stipulated that plaintiff's evidence would show that its costs had increased by January 1, 1954, so that the established rates did not render fair and reasonable return and were confiscatory. Defendants did not resist that showing. We accept that as a fact established for the purposes of this litigation.

Defendants here advance the contentions that the courts are without jurisdiction to interfere with the discretionary power of the city council; that the existing franchise is a valid contract; and that plaintiff is

estopped to assert a deprivation of property without due process of law and in violation of the Constitutions of the United States and of Nebraska.

The plaintiff concedes that the franchise is a contract as a matter of law but contends that by its terms there was intended a flexibility of rates; that the city has regulatory power which is explicitly and impliedly a part of the contract; and that the rates to be charged are subject to regulation. Section 4 of the franchise ordinance provided: "Grantee shall file and make effective initially the schedule of maximum rates for natural gas service set forth below, and shall furnish natural gas at such rates, or at such other reasonable, lawful, and valid rates as may hereafter be established from time to time by Grantee, subject to the approval of the proper body having jurisdiction over such rates for gas service by Grantee in said city.

SCHEDULE OF RATES:

| First | 500 cu.ft. per month | $ .20 Per C.C.F. |
| Next | 1,500 cu.ft. per month | .15 Per C.C.F. |
| Next | 1,000 cu.ft. per month | .10 Per C.C.F. |
| Next | 7,000 cu.ft. per month | .60 Per M.C.F. |
| Next | 90,000 cu.ft. per month | .50 Per M.C.F. |
| Next | 100,000 cu.ft. per month | .40 Per M.C.F. |
| Balance | | .35 Per M.C.F. |
| Minimum Charge | | $1.00 Per Month |

Gross Rate (above rate plus 10%) applied if bill is not paid within 10 days after date of bill."

The proposed schedule of rates is as follows:

| First | 1,000 cu.ft. | $ .20 Per C.C.F.* |
| Next | 4,000 cu.ft. | .10 Per C.C.F. |
| Next | 45,000 cu.ft. | .06 Per C.C.F. |
| Next | 50,000 cu.ft. | .05½ Per C.C.F. |
| All Additional | | .04½ Per C.C.F. |

*Minimum Monthly Charge: $2.00

Delayed Payment Charge: 5% on first $20.00 of bill, plus 2% on excess.

Bills will be rendered at monthly intervals.

The above language in the franchise is subject to the reasonable construction that "initially" the rates provided in the franchise were applicable until such time, within the period of the franchise, the plaintiff established "other reasonable, lawful, and valid rates * * * subject to the approval of the proper body having jurisdiction over such rates * * *."

The question, then, is: Is the city the "proper body" having regulatory power, since it is the city that has been requested and which has refused to exercise the regulatory power?

At the time the franchise was granted, section 17-125, R. S. 1943, provided in part: "Such franchise shall fix the amount that may be charged during such period for such gas or electricity and provide that such city may, after such period, make any reasonable regulation with reference to any person, firm or corporation holding such franchise either as to charges for such gas or electricity or otherwise."

In City of University Place v. Lincoln Gas & Electric Light Co., 109 Neb. 370, 191 N. W. 432, we stated: "At the time of the adoption of the ordinance hereinafter referred to, no power had been granted by the legislature to cities of the second class to regulate the rates which a public utility corporation might lawfully charge for furnishing gas to the inhabitants of the city; such power was not granted until 1911. Rev. St. 1913, sec. 5019." (Section 5019, Rev. St. 1913, became section 17-125, R. S. 1943.)

We did not there undertake to define the extent of the regulatory power granted. Both parties here state that the language is dictum. Neither party contends that it is an erroneous statement. We hold it to be a correct statement of the law.

In 1955 the Legislature by an independent act provided: "Cities of the second class and villages shall have power to regulate and fix the rents or rates of gas, and to regulate and fix the charges for gas meters

or other device or means necessary for determining the consumption of gas." Laws 1955, c. 41, § 1, p. 156. This became section 17-528.01, R. S. Supp., 1955, and became effective September 18, 1955.

In 1957 the Legislature repealed both section 17-125, R. R. S. 1943, and section 17-528.01, R. S. Supp., 1955, and enacted what is now section 17-528.02, R. S. Supp., 1957, which provides in part: "Such city or village may make any reasonable regulation with reference to any person, firm, or corporation holding such franchise as to charges for such gas." This amendment became effective September 20, 1957, prior to the entry of the decree herein on October 10, 1957.

Defendants contend that the amendments above can have no effect on the franchise since they were not passed until after the effective date of the franchise and that the language of section 17-125, R. S. 1943, limits the regulatory power of the city to the period after the expiration of the 25 years of the franchise.

This depends on whether the power of regulation was impliedly a part of the franchise and whether the amendments, adopted afterward, apply.

Both of these questions have been directly decided by us contrary to the contentions of the defendants.

In McCook Irrigation & Water Power Co. v. Burtless, 98 Neb. 141, 152 N. W. 334, L. R. A. 1915D 1205, we had this fact situation: Contracts for water were entered into providing a fixed charge for water per acre per annum. The company desired and secured an order from the State Railway Commission materially increasing the annual per acre charge. It was contended that the contract rate was a property right with which the state, in the exercise of its regulatory power, could not interfere. We held: "* * * any contracts entered into between the irrigation company and consumers under the ditch, with reference to the annual rates which should be charged for the use of water, were entered into with the law forming a part of the contract, and were subject to legis-

lative control. * * * Holding the view that the contracts were entered into subject to the right of the state in the exercise of its police power to regulate and fix reasonable rates to be charged for the use of the water, the order of the railway commission does not take property without due process of law, and is not in violation of the Constitution of the United States, the fourteenth amendment, or the Constitution of the state of Nebraska."

In Marquis v. Polk County Telephone Co., 100 Neb. 140, 158 N. W. 927, we had this fact situation: An ordinance had been passed by the city of Stromsburg granting a franchise to a company in which the rates for telephone service were definitely stated. The company filed increased rates with the State Railway Commission and they were approved by that body. We held: "This court has held in a number of cases that contracts made by public service corporations are made with the right of regulation as a part of the contract, and that the power to lower excessive rates or to increase inadequate rates still rested solely in the legislature until by virtue of the constitutional amendment the same power was extended to the state railway commission. * * * The fact that at the time the franchise ordinance in question was passed the railway commission was not in existence is not material."

The reason for this rule, although not stated, is obvious. The power to regulate the rates is at all times in the Legislature or in a regulatory body to which the Legislature delegates the power. The delegation to the city here of the power does not affect the power, but provides a body competent to exercise the power.

In Furstenberg v. Omaha & C. B. St. Ry. Co., 132 Neb. 562, 272 N. W. 756, we discussed these cases and held: "Public service corporations in each instance sought and obtained relief before the railway commission from low rates specifically imposed by their own franchises or contractual obligations without estoppel. In other cases

they appear as objectors and have been granted or denied relief despite their own contractual obligations. The analogy is that not any understanding, implication, or express agreement by franchise between a municipality and a public service company, seeking to disrobe the paramount power of the railway commission, can have any legal force in this state. To assume that such a municipality, as a condition of favorably exercising its veto power with reference to the entry into its jurisdiction of a common carrier, could, by franchise, divest a constitutionally created regulatory body, such as the railway commission, of its jurisdiction is without logic. Appellee is not estopped by its franchise from invoking affirmative or negative action in this proceeding because to that extent the jurisdiction of the railway commission would be divested and its power to serve the people destroyed."

From these decisions the rule necessarily follows that a franchise for the sale of gas granted by a city of the second class to a public service corporation is made with the right of regulation of rates to be charged for gas a part of the contract; and that power rests in the Legislature until such time as it is delegated to a proper body. This rule is necessary either to protect the public service agency from confiscatory rates or to protect the public from exorbitant rates if so fixed by a franchise. The fact that the delegation of the power to another body occurs after the granting of the franchise is not material.

We have here, then, this situation: The power to regulate the rates involved has been delegated to the defendant city. Since January 1, 1954, the rates in the franchise have been inadequate to give the plaintiff a fair and reasonable return on its invested capital and are confiscatory. The defendant city, having the power and duty to fix compensatory rates so as to give a fair and reasonable return to plaintiff, has refused to do so. Defendants make no contention that the rates proposed

by the plaintiff are in anywise excessive. They merely rest on their contract contention.

It has long been the rule that an equity court has the power to act to prevent irreparable injury.

The situation here is in many respects comparable to that presented in Smith v. Illinois Bell Telegraph Co., 270 U. S. 587, 46 S. Ct. 408, 70 L. Ed. 747, where it was held: "It thus appears that, following the decree of the state court reversing the permanent order in respect of the second schedule and directing further proceeding, the commission for a period of two years remained practically dormant, and nothing in the circumstances suggests that it had any intention of going further with the matter. For this apparent neglect on the part of the commission, no reason or excuse has been given; and it is just to say that, without explanation, its conduct evinces an entire lack of that acute appreciation of justice which should characterize a tribunal charged with the delicate and important duty of regulating the rates of a public utility with fairness to its patrons, but with a hand quick to preserve it from confiscation. Property may be as effectively taken by long-continued and unreasonable delay in putting an end to confiscatory rates as by an express affirmance of them; and where, in that respect, such a state of facts is disclosed as we have here, the injured public service company is not required indefinitely to await a decision of the rate-making tribunal before applying to a federal court for equitable relief."

The court there affirmed an order enjoining the rate regulatory body from enforcing or attempting to enforce a schedule of rates alleged to be confiscatory and from taking any steps or proceedings against the public service company by reason of the collection of charges under a higher schedule.

The trial court order here "perpetually enjoined and prohibited" defendants from preventing the plaintiff putting the proposed rates into effect and collecting

the same. It cannot be assumed that the proposed schedule of rates is in its entirety the only schedule of rates that would produce a fair, reasonable, and nonconfiscatory return. The order is subject to a construction that would deny the defendant city the exercise of its regulatory powers.

Accordingly we set aside the judgment of the trial court and remand the cause with directions to render a judgment enjoining the defendants and their successors in office from preventing the plaintiff putting the proposed rates into effect and collecting the same until such time as the city by proper action approves the same, or until such time as the city by proper exercise of its regulatory powers establishes fair, adequate, and compensatory rates to be charged by the plaintiff for gas sold to its customers in defendant city.

All costs are taxed to the defendant city.

The judgment of the trial court is accordingly reversed and the cause remanded with directions to render a decree in accord with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.