**FLORA CONSTRUCTION COMPANY, a corporation, Appellant (Plaintiff below),**

v.

**BRIDGER VALLEY ELECTRIC ASSOCIATION, INC., a corporation, Appellee (Defendant below).**

No. 2916.

Supreme Court of Wyoming.

Oct. 11, 1960.

A. G. McClintock, Cheyenne, for appellant.

Vincent A. Vehar, Evanston, for appellee.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

Mr. Chief Justice BLUME delivered the opinion of the court.

This is an action in which the plaintiff and appellant, Flora Construction Company, seeks to recover an amount of money from the Bridger Valley Electric Association, Inc., defendant and appellee herein. Plaintiff alleged in its petition that pursuant to a contract between the parties hereto plaintiff agreed to erect service assembly units necessary to the project which said units would include a certain number of units of neoprene triplex at a cost of $158.40 per unit; and that by an amendment an additional partial unit was added to the contract at $215 per unit. That part of the contract provides: "*Service Assembly Unit.* Consists of 1,000 feet of single conductor measured horizontally between conductor supports." Plaintiff further alleged:

"In the course of the construction of said Service Assembly Units plaintiff claims to have installed 17,937 feet, or 17.937 units, of the type of conductor known by the trade name of 'Carp' and 1,329 feet, or 1.329 units, of the type of conductor known by the trade name of 'Shad.' On the basis of these computations, plaintiff claimed compensation at the rate of $158.40 per unit on the 'Carp' and at the rate of $215.00 per unit upon the 'Shad', or total compensation for the two items of $3,126.96. Defendant, however, claimed that the amounts of such conductor installed amounted to only 5,979 feet, or 5.979 units of the 'Carp' and 443 feet, or .443 units of the 'Shad', and applying the agreed prices per unit thereto, claimed that plaintiff was entitled to payment of only $1,042.-32 for these two items and in the payment hereinabove mentioned refused to pay more that the latter amount. * * *"

Plaintiff accordingly prayed judgment for the sum of $2,084.64 with interest. Defend-

ant and appellee answered, denying that it owed the plaintiff anything and particularly pleading as follows:

"* * * generally and specially denies that 'Neoprene Triplex' conductor constitutes or is anything more than a single conductor, composed of three parts united, not single or independent of each other, as attempted to be alleged [by the plaintiff] in said paragraph No. 4; alleges that said 'Neoprene Triplex' conductor is a single conductor consisting of three interdependent conductors combined and twisted into one, as a three strand rope is made; and generally and specially denies all other material allegations, matters and things in said paragraph No. 4, not herein expressly and specifically in direct terms otherwise admitted, denied or qualified;"

Defendant further denied that plaintiff installed 17,937 feet or any other amount in excess of 5,979 feet of carp and 443 feet of shad.

In reply plaintiff denied that neoprene triplex conductor constitutes or is anything more that a single conductor, composed of three parts united, not single or independent of each other and denied that neoprene triplex is a single conductor consisting of three interdependent conductors combined and twisted into one, as a three strand rope is made.

The case was tried to the court without a jury and judgment was entered in favor of the defendant. Plaintiff has appealed to this court. The parties will be mentioned herein as in the court below or as appellant and appellee.

It appears herein that the original contract provided that the plaintiff should furnish 8.620 units of No. 4 Neoprene Triplex. The amount of $16.50 was allocated to each unit for labor and $141.90 for material, making a total of $158.40 per unit. The total amount to be paid for all the units was $1,365.41, namely 8.620 times $158.40. The contract was amended on June 22, 1955. Instead of referring to No. 4 Neoprene

Triplex it substituted the code name of "carp". The units were reduced from 8.620 to 5.671 units; the allocation for labor and material remained the same. Only the total price was changed, namely to the sum of $898.29 for all the units, being 5.671 times $158.40. The contract was again amended on December 1, 1955, but the only change in connection with carp was the increase from 5.671 units to 5.979 units; labor and materials were allocated the same as previously. Only the total was changed in accordance with the increase in the units, namely to the sum of $947.07 for all the units, being 5.979 times $158.40. The amendment also called for 443 feet of so-called shad, a code name for a material apparently used in connection with the carp; the total price to be paid for that was, according to the amendment, the sum of $95.25. The neoprene triplex or carp and the shad constitute that part of an electric line which takes the electricity from the main line to the user's meter.

In the trial of the case it was not disputed that only 5.979 units of neoprene triplex or carp were installed and that a unit consists of one thousand feet, but plaintiff and appellant claims that each unit contains three single conductors and that, accordingly, it was entitled to payment at the rate of three times 5,979 feet or a total of 17,937 feet. Counsel calls attention to the fact that defendant itself admitted that three conductors are contained in the carp and shad which was furnished and installed by the plaintiff, so counsel thinks that that is the end of the matter. But neither counsel for the defendant nor the trial court took that view. Since the total price to be paid for the No. 4 Neoprene Triplex or carp and the total price to be paid for the shad is definitely specified in the contract, it is hard to see how the plaintiff can ask for any more than that. We agree with counsel for appellant that the object of the court in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used; that the contract is controlling if that language is plain and unequivocal; that the contract

must be considered as a whole; and that it is not the duty of the court to make a contract for the parties. But we differ with the conclusion drawn by the learned counsel for the appellant. Counsel is not justified in his contention that the contract is so clear as to make his contention valid. Counsel for the defendant is, we think, much more justified in making such claim for his contention. If there were any doubt on that point—and we think there is none—it is by reason of the provision that an assembly unit consists of one thousand feet of a single conductor. We think that counsel for appellant lays too much stress on that provision. The contract mentions various kinds of assembly units; some eight pages of the contract are devoted thereto, mentioning various kinds. The above-mentioned provision on which plaintiff relies may be considered a general provision, but the reference to neoprene triplex or carp and shad are specific provisions stating definitely what the amount due thereon is to be. It is a well-known rule that general terms and provisions in a contract yield to specific ones, if not reconcilable. 17 C.J.S. Contracts § 313. The payment to be made for carp and shad in the amounts specified in the contract is irreconcilable with the fact that three times that amount should be paid.

Let us pursue the matter a little further. According to the dictionary the term "triplex" means triple, threefold—a thing that is triplex. In other words, a triplex is a unit consisting of three different parts. The contention of the defendant herein fits that meaning. The contention of plaintiff and appellant does not. According to the latter's contention, there are only units; parts are lacking. That itself appears to be quite significant. The witness Amos R. Jackson, engineer of the defendant in this matter, testified that when a contract calls for neoprene triplex it calls for—in other words, it means—a three conductor cable and that the same thing is true when a contract makes reference to carp or shad; that a unit is a triplex cable consisting of three different strands made up of two insulated conductors, stranded with a bare conductor; the strands are intertwined and when that is done they constitute a single conductor; when such cable is bought the strands are not bought separately but all three strands are bought together as one unit and cost about $130 to $140 a unit. The court struck the testimony as to the cost on the theory that it made no difference and that the question is as to what the contract is. That doubtless is generally true but we are inclined to think that in this case, in view of the different contentions of the parties, the testimony throws some light on the subject before us. As already stated, the contract allocated the sum of $141.90 to the material. When the material for the three strands—conductors—cost only $130 it is unlikely that a bid for $390, or three times the cost according to plaintiff's theory, would have been submitted or accepted. According to the witness Jackson, two of the strands are covered by plastic, rubber or other nonconductor, the third strand being what is called a bare conductor. However, each of the strands, as shown by the exhibits before us, contains a number of separate wires. The witness Jackson testified that technically speaking neoprene triplex represents twenty-one single conductors. Hence, if plaintiff relies on the provision relating to single conductors as hereinbefore mentioned it might as well claim twenty-one times the amount specified to be paid for each unit instead of only three times. Walter Flora, witness for the plaintiff, tried to explain this but the trial court had a right to accept the testimony of the witness Jackson. The latter, as well as the witness Olsen, a professional engineer who drew the plans and specifications in the project here involved, positively testified that plaintiff did not install 17,937 feet of neoprene triplex as claimed by plaintiff but only 5,979 feet of that material and only 443 feet of shad.

The trial court was fully justified in entering its judgment herein in favor of the defendant and appellee and that judgment should be, and is hereby, affirmed.

Affirmed.