**NORTHERN GAS COMPANY, a Wyoming Corporation, Appellant (Defendant below),**

v.

**The TOWN OF SINCLAIR, a Wyoming Municipal Corporation, Appellee (Plaintiff below).**

**The TOWN OF SINCLAIR, a Wyoming Municipal Corporation, Appellant (Plaintiff below),**

v.

**NORTHERN GAS COMPANY, a Wyoming Corporation, Appellee (Defendant below).**

Nos. 4981, 4982.

Supreme Court of Wyoming.

April 2, 1979.

David G. Lewis of Brown, Drew, Apostolos, Massey & Sullivan, Casper, for appellant in Case No. 4981 and appellee in Case No. 4982.

K. Craig Williams, Rawlins, for appellee in Case No. 4981 and appellant in Case No. 4982.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE, and ROONEY, JJ.

THOMAS, Justice.

Northern Gas Company asks this court to exclude from the computation of a franchise fee payable to the Town of Sinclair sales of natural gas made to an oil refinery. Northern Gas Company claims there is an ambiguity in the ordinance granting the franchise which is developed from evidence relating to circumstances preceding the granting of the franchise. The district court held that the ordinance granting the franchise should be viewed as a taxing ordinance and that its terms were clear, unambiguous, and should be enforced. In so ruling it held that evidence of the surrounding circumstances preceding the ordinance was not material. Both parties to this appeal agree that the case should be disposed of under principles of contract law even though the district court treated the case as one involving a taxing ordinance. We will affirm the judgment of the district court awarding to the Town of Sinclair the one percent franchise fee on the sales of natural gas to the oil refinery, but we will do that on the basis of principles of contract law rather than rules relating to taxes. We will

hold that evidence of surrounding circumstances cannot be relied upon to structure an ambiguity in otherwise clear language in order to invoke rules applicable to the construction of contracts.

In a cross-appeal the Town of Sinclair asks that interest be awarded to it upon the amount of the judgment. The trial court had refused to award pre-judgment interest, holding that such an award was not proper under the rules relating to taxes. We will reverse the judgment of the district court in this regard and hold that pre-judgment interest should have been awarded to the Town of Sinclair.

While not material to the disposition of this case, the history of the process of furnishing natural gas service to residents of the Town of Sinclair is helpful in understanding the position of Northern Gas Company. Northern Gas Company began selling natural gas to Sinclair Refining Company in 1952. Those sales were made pursuant to a certificate of public convenience and necessity issued by the Public Service Commission of Wyoming which did not include sales of natural gas to residents of the Town of Sinclair. The contract provided for delivery of the natural gas at the receiving pipeline of Sinclair Refining Company and that the obligation of providing a pipeline to a point of consumption was the responsibility of Sinclair Refining Company. This arrangement went on through a series of contracts up to the time of trial. In 1967, the point of delivery was changed to Sinclair's refinery yard at Sinclair, Wyoming, and at that time Sinclair Refining Company conveyed to Northern Gas Company the pipeline from the point where gas previously was delivered to the new point of delivery. Except for this information, the record is silent so far as the actual location of the natural gas pipelines or the distribution system in the Town of Sinclair is concerned.

The Town of Sinclair was a company town, and at least prior to 1959 Sinclair Refining Company distributed natural gas to homeowners and other users within the community. In 1959 the Town of Sinclair was granted a certificate of public convenience and necessity to operate all electric and gas utility properties within the Town of Sinclair. Apparently that situation continued until 1967, with the Town of Sinclair purchasing its natural gas from Sinclair Refining Company. At that time a conclusion was reached that the refining company could be viewed as a public utility because of its sale of natural gas to the Town of Sinclair. In the summer and fall of 1967 an arrangement was made to sell the gas distribution system in the Town of Sinclair to Northern Gas Company.[1] The Town of Sinclair proposed to grant a franchise to Northern Gas Company to sell gas to domestic and commercial users within the Town of Sinclair. A special election was held in accordance with State law and the voters approved the proposed sale on October 2, 1967. On October 16, 1967, Ordinance No. 112 was adopted pursuant to which the franchise was granted to Northern Gas Company, and that franchise was accepted by Northern Gas Company on October 17, 1967. The Public Service Commission of Wyoming, in anticipation of that arrangement, entered its order authorizing Northern Gas Company to purchase the natural gas system described in the applications and exhibits which had been submitted to it, cancelling the certificate authority held by the Town of Sinclair, and authorizing Northern Gas Company to furnish the services pursuant to its existing authority. The ordinance provided with respect to consideration for the franchise as follows:

"*Section 6.* As a consideration for all franchise rights and contractual privileges granted by the Town of Sinclair under the franchise hereby granted, the Company shall pay to the Town of Sinclair an amount equal to one percent (1%) of the Company's gross revenue as said term is defined herein. Such payment shall be

---

1. The sale was accomplished on October 17, 1967, and Northern Gas Company, in addition to other extraneous matters, attaches significance to the description of the property transferred by the Conveyance and Bill of Sale of that date.

made quarterly on or before the 10th day of *Jan 10, 1968*, and on or before the 10th day of the month following the end of each succeeding calendar quarter during the term of this franchise.

"The term 'Gross Revenue' as used herein shall mean and be construed as the Company's gross operating revenue accruing during the preceding calendar quarter or fraction thereof from the sale of natural gas within the corporate limits of the Town of Sinclair, Wyoming, other than such revenue derived from transactions in interstate or foreign commerce, sales of natural gas to the Town or from business done with the U.S. Government or any agency thereof and after deducting therefrom any amounts paid by the Company to the United States or to the State of Wyoming as excise or business taxes upon the sale or distribution of natural gas in the Town of Sinclair, Wyoming, and at the election of the Company, Company may also deduct from 'gross revenues' the total of all uncollectible revenues from customers within the Town during the previous calendar quarter."

For a period of ten years Northern Gas Company paid the franchise fee on sales of natural gas to the inhabitants and commercial users in the Town of Sinclair excluding therefrom all sales to Sinclair Refining Company and its successors in interest. In February of 1977 the Town of Sinclair made demand upon Northern Gas Company for payment of the one percent franchise fee upon the sales of natural gas to the refinery for the 10-year period. Northern Gas Company refused to pay, and this action was then instituted by the Town of Sinclair to recover the franchise fee on the sales of natural gas to the refinery together with interest on the franchise fees on such sales from the time the payments were due.

After trial of the matter the district court entered its judgment awarding the amount of $39,658.78 to the Town of Sinclair. This sum represented the one percent franchise fee as applied to the sales of natural gas to the oil refinery. The facts for the most part were not disputed, and the parties stipulated that the oil refinery was situated within the corporate limits of the Town of Sinclair. The district court provided for interest only on the judgment, denying, however, the claim of the Town of Sinclair for pre-judgment interest. There does appear in the record an opinion letter of the district court which makes it clear that the district court treated the case as one arising from a taxing ordinance rather than as a matter of contract. It was the conclusion of the district court that because the matter involved a taxing ordinance it was not appropriate to award interest prior to judgment.

In its appeal Northern Gas Company states that the issue is whether Ordinance No. 112 is a taxing measure or whether it represents a contract between Northern Gas Company and the Town of Sinclair, the interpretation of which should be governed by Wyoming law regarding contracts. Northern Gas Company then makes the following arguments in support of its position that the one percent franchise fee should not be applied to the sales of natural gas to the oil refinery:

"I. A FRANCHISE GRANT MADE BY A MUNICIPALITY TO A PUBLIC SERVICE COMPANY IS, UPON ACCEPTANCE BY THE COMPANY, A CONTRACT.

"II. WHEN A DOUBT ARISES AS TO THE SUBJECT MATTER TO BE TAXED UNDER THE CONTRACT, THE TRIAL COURT SHOULD EXAMINE THE EXTRINSIC EVIDENCE ADMITTED TO DETERMINE THE INTENT OF THE PARTIES.

"III. IN DETERMINING THE INTENT OF THE PARTIES, WEIGHT SHOULD BE GIVEN TO THE CONSTRUCTION PUT ON THE CONTRACT CONTEMPORANEOUSLY BY THE PARTIES.

"IV. THE CONTEMPORANEOUS CONSTRUCTION PUT UPON AN ORDINANCE BY THE ADMINISTRATIVE AGENCY EXE-

CUTING IT SHOULD BE GIVEN WEIGHT AS TO ITS MEANING."

■ The Town of Sinclair in its brief and argument agreed that the franchise created by the adoption of Ordinance No. 112 and the acceptance of its conditions by Northern Gas Company resulted in a contract between the Town of Sinclair and Northern Gas Company. The Town of Sinclair does not and did not claim that this was a revenue measure adopted under its power to tax. We agree with this position taken by the parties. The concept is aptly expressed in 12 McQuillin, Municipal Corporations, § 34.06, p. 18 (3d Ed. 1970, Rev.), as follows:

"When the right to use the streets is granted and accepted and all conditions imposed incident to the right performed, it ceases to be a mere license and becomes a valid contract. * * *" (Footnotes omitted.)

E.g., *Chesapeake & P. Tel. Co. v. Mayor, etc., of City of Baltimore*, 89 Md. 689, 43 A. 784, 44 A. 1033 (1899); *City of Liberal v. Teleprompter Cable Service, Inc.*, 218 Kan. 289, 544 P.2d 330 (1975); *Owensboro v. Top Vision Cable Company of Kentucky*, Ky. App., 487 S.W.2d 283 (1972), cert. den. 411 U.S. 948, 93 S.Ct. 1926, 36 L.Ed.2d 410; *Kansas-Nebraska Natural Gas Co. v. City of St. Edward*, 167 Neb. 15, 91 N.W.2d 69 (1958); *Sapulpa v. Sapulpa Oil and Gas Co.*, 22 Okl. 347, 97 P. 1007 (1908); *City of Jacksonville v. General Telephone Company of the Southwest*, Tex.Civ.App., 538 S.W.2d 253 (1976); *City of Tukwila v. City of Seattle*, 68 Wash.2d 611, 414 P.2d 597 (1966); *Appalachian Power Co. v. City of Huntington*, W.Va., 210 S.E.2d 471 (1974). We then must proceed to examine the claimed issues in light of the rules applicable to contracts.

■ The essential fallacy of the position of Northern Gas Company is that it assumes that the court can examine evidence of circumstances antedating the passage and acceptance of Ordinance No. 112 in order to determine whether an ambiguity exists requiring a construction of the contract. Northern Gas Company is saying, in effect, once one becomes aware of the history leading to the grant of this franchise and the arrangements between Northern Gas Company, Sinclair Refining Company and its successors in interest, and the Town of Sinclair, one must wonder about the sales of natural gas which were intended to be included in the term "Gross Revenue" as defined in Section 6 of Ordinance No. 112. This court repeatedly has held, however, that when the language of a contract is plain and unequivocal that language is controlling and the interpretation of the contractual provisions is for the court to make as a matter of law. This is the rule to be applied when the terms of the instrument are plain and unambiguous. *Shepard v. Top Hat Land & Cattle Co.*, Wyo., 560 P.2d 730 (1977); *Mauch v. Ballou*, Wyo., 499 P.2d 591 (1972); *Craig v. Gudim*, Wyo., 488 P.2d 316 (1971); *Chandler-Simpson, Inc. v. Gorrell*, Wyo., 464 P.2d 849 (1970); *Flora Construction Company v. Bridger Valley Electric Association, Inc.*, Wyo., 355 P.2d 884 (1960); *Barlow v. Markeeff*, 74 Wyo. 171, 284 P.2d 1093 (1955). We can detect no ambiguity in the clear language of Ordinance No. 112. There then is no necessity for any construction of the contract of these parties.

■ We do not ignore here the concept that the contract must be construed as a whole with meaning afforded to all of the language used, if that can be done and a reasonable construction achieved. *Shepard v. Top Hat Land & Cattle Co., supra.* Northern Gas Company urges that the sales upon which the franchise fee is computed should be those only which are co-extensive with the grant by the Town of Sinclair of the right to use its property. Northern Gas Company then points to other language of the ordinance and other evidence which it claims distinguishes the oil refinery as a customer from other users of natural gas within the Town of Sinclair. This argument assumes that the right to use its property which the Town of Sinclair granted to Northern Gas Company did not include any use of that property for the purpose of supplying natural gas to the oil refinery. The record is silent as to whether such a use

was required of the town property, and consequently we are foreclosed from pursuing this case in the manner suggested by Northern Gas Company based upon that assumption.

We then turn to the argument of Northern Gas Company attaching significance to the contemporaneous construction placed upon the contract by the parties. The short answer to this contention, however, is that a contemporaneous construction of the parties only assumes significance when there is a necessity for a court to examine an ambiguous contract and construe or interpret it. *Chandler-Simpson, Inc. v. Gorrell, supra.* As we have noted above, this contract is not ambiguous. Every contract about which there is a dispute among the parties resulting in litigation is not one which requires construction.

As to the argument of Northern Gas Company that weight should be given to the construction placed on the ordinance by the administrative agency charged with its execution, that is the Town of Sinclair, little more need be said. The Town of Sinclair correctly points out that the record does not disclose except by inference (which the district judge apparently did·not adopt), that any construction such as that claimed by Northern Gas Company ever was made of the ordinance by the Town of Sinclair. In any event, the rule which Northern Gas Company wants the court to invoke, like the concepts discussed previously, can only be used in an instance in which ambiguity is found. Cf., *Hercules Powder Co. v. State Board of Equalization*, 66 Wyo. 268, 208 P.2d 1096, 210 P.2d 824 (1949).

We affirm the judgment entered by the district court in favor of the Town of Sinclair, but we do so on the ground that Ordinance No. 112 is a clear and unambiguous contract. Pursuant to the terms of the contract the one percent franchise fee must be paid upon the sales of natural gas within the corporate limits of the Town of Sinclair, and such sales include those made to the oil refinery.

We turn then to the matter of interest. In its appeal the Town of Sinclair urges that the district court erred in not awarding pre-judgment interest. This situation fits within the concepts announced by this court in *Rissler & McMurry Company v. Atlantic Richfield Co.*, Wyo., 559 P.2d 25 (1977), and *Laramie Rivers Company v. Pioneer Canal Company*, Wyo., 565 P.2d 1241 (1977). There was no dispute here as to the amount due; it was agreed upon at the trial. The only dispute was over Northern Gas Company's liability for the amount adjudged to be due. The real question is whether Northern Gas Company should be excused by the indication in *Rissler & McMurry Company v. Atlantic Richfield Co., supra*, that notice of the amount due must be furnished before the interest will start to run. The record is clear that the information with respect to the natural gas sales always was available to Northern Gas Company. Northern Gas Company informed the Town of Sinclair of the amount of gross revenue at the time that it paid the franchise fee provided for in Section 6 of Ordinance No. 112. As between the two parties, Northern Gas Company had the information needed to compute the franchise fee, and the Town of Sinclair had to obtain the information from Northern Gas Company even for purposes of this litigation. Since the thrust of the caveat found in *Rissler & McMurry Company*·is that a defendant should not be held in default if he has not been informed of what to pay, it need not be applied in this case. In this instance there would be no necessity for the Town of Sinclair to inform Northern Gas Company of what it should pay because Northern Gas Company, had it followed the terms of the contract, would have known the correct amount which was due. We reverse the judgment of the district court that interest should run only from the date of judgment, and remand for entry of a judgment for interest on each franchise fee payment which should have been made on the sales of natural gas to the oil refinery from the date that each such payment was due under the terms of Ordinance No. 112.

Affirmed in part and reversed and remanded in part in accordance with the foregoing opinion.

ROONEY, Justice, specially concurring.

My concurrence in this matter is with express recognition of the power and authority of the Public Service Commission to regulate and control the services and rates of public utilities. Section 37–3–101, W.S. 1977, et seq.

I believe it to be with consideration of such that the trial court found the ordinance to be a taxing device—misplaced as the consideration may have been.

In regulating the rates (and, thus, the profits) of a public utility, the Public Service Commission must consider the expenses of the utility. If the expenses are a proper cost of doing business, they enter into the computation in determination of the rates to be charged to the consumer. The consumer ultimately pays the expense. All contracts in which a utility is a party must be filed with the Public Service Commission as an adjunct to this process. Section 37–3–111, W.S.1977.

And so it is with franchise fees. The Public Service Commission must determine if the fees are a legitimate cost of doing business and a fair rental for the use of the streets and alleys. If so, the Public Service Commission will allow the utility to include the expense in computation of its rate structure; and all of the customers of the utility, both within and without the municipal corporation boundaries, will pay their proportionate cost of the fees as part of their utility service charges. If, however, the Public Service Commission determines that the fees are in fact a taxing device, it will not allow the utility to use it in establishing a rate base, and it will require the utility to include the fee as a separate item on the billings to the customers of the utility who reside within the boundaries of the municipal corporation. It will not allow the municipal corporation to use the franchise fee as a device for securing revenue to pay municipal expenses from utility customers outside of the municipality.

All of this is well recognized and apparent. My special concurrence is for the purpose of indicating that I do not want to indicate an approval of a change therein.

The franchise was presented to the Public Service Commission. The amount of the fee was 1%. In The Matter of the Application of Montana-Dakota Utilities Company for Authority to Increase its Rates and Charges for Natural Gas and Electric Utility Services Within the Municipalities of (1) Sheridan, Buffalo and Kaycee and Environs for gas, and (2) Sheridan, Dayton, Ranchester, Big Horn and Story and Environs for electric, in Commission Dockets No. 9308 and 9309, the Public Service Commission approved, in 1956, a 1% franchise fee as a proper cost of doing business.

In the 26-page opinion, findings of fact and conclusions of law, the Commission reviewed the tax aspect of a franchise fee and its authority to act in the premises. After referring to extensive case law on the subject, the Commission found that it had such authority and stated:

"We are endowed with authority to fix just and reasonable rates for public utilities and, in the rate making process, we have authority to consider their operating expenses, to determine the reasonableness thereof and to prescribe the treatment to be given discriminatory operating costs which they must lawfully incur in the pursuit of their business. [Citing that which is now §§ 37–2–121, 37–2–122, 37–3–104 and 37–3–112, W.S.1977.]"

After quoting extensively from *State ex rel. Pacific Telephone & Telegraph Co. v. Department of Public Service et al.*, 19 Wash.2d 200, 142 P.2d 498 (1943), the Commission found that it

" * * * is vested with authority to consider and determine the reasonableness of any item of contract expense incurred by public utilities in determining what are just and reasonable rates for them to charge their consumers, i. e., such determinations are a part of the rate making process. Consequently, we are empowered to determine whether the payments called for by Franchise Ordinance No. 944 of the City of Sheridan constitute a fair and reasonable amount for MDU to pay said municipality as rental for the occupancy and use of its

streets, alleys and public grounds or whether, in fact, a portion thereof amounts to a tax."

The Commission then authorized the filing of a rate schedule by the utility, which would, among other things, authorize and empower the utility to pass on

"pro rata to all consumers residing in any municipality within the Sheridan Division of the Company any payments amounting to more than 1% of its gross revenues collected from them for either natural gas or electric utility service, payable under any franchise ordinance hereafter negotiated by it with said municipalities as compensation for the use of their streets, alleys and public grounds in conducting its respective utility operations within the corporate limits thereof, plus 2% of such excessive franchise payments to cover costs of accounting and billing such consumers for their pro rata share thereof, in the manner hereinafter ordered."

In 1972, the Commission noted that it had not approved a fee higher than 1% since the 1956 opinion, but it considered a number of factors which could indicate a basis for change *in individual cases.* It rejected a request for approval of a 3% franchise fee and approved a 2% fee. See In The Matter of the New Franchise Agreement Between the City of Cheyenne and Cheyenne Light, Fuel and Power Company, Public Service Commission Docket No. 9563.

The jurisdiction and action of the Public Service Commission in this respect was, and is, proper.

In the case before us, the franchise fee was within the 1% limit. It will ultimately be paid by all of the utility customers. My concurrence herein is only because we need not here consider the questions of Public Service Commission jurisdiction or exhaustion of administrative remedies.

The construction and legal effect of a contract, as here done, is properly to be determined by the court as a question of law, in the absence of an issue of fact. *Shepard v. Top Hat Land & Cattle Co.,* Wyo., 560 P.2d 730 (1977); *Bosler v. Coble,* 14 Wyo. 423, 84 P. 895 (1906); *Reed &*

*Martin, Inc. v. City and County of Honolulu,* 50 Haw. 347, 440 P.2d 526 (1968). I concur with the interpretation here made by the court.