No. 38,059

Manor Baking Company, a corporation, *Appellee*, v. The City of Topeka, a municipal corporation; F. J. Warren, Mayor; J. Glenn Davis, City Commissioner; Harry C. Snyder, City Commissioner; Lloyd B. Smith, City Commissioner; C. Madison Williams, City Commissioner; and Frank P. Eresch, City Attorney, *Appellants*.

(225 P. 2d 89)

Opinion filed December 9, 1950.

*Frank P. Eresch,* city attorney, and *Peter F. Caldwell,* assistant city attorney, argued the cause, and were on the briefs for appellants.

*T. M. Lillard,* of Topeka, argued the cause, and *O. B. Eidson, Philip H. Lewis* and *James W. Porter,* all of Topeka, and *Frazor T. Edmondson,* of Dallas, Texas, were with him on the briefs for appellee.

The opinion of the court was delivered by

Price, J.: This appeal grows out of an attempt by the governing body of the city of Topeka to regulate the manner in which the Manor Baking Company (hereinafter referred to as plaintiff) is to operate and conduct its business in Topeka. Plaintiff's action, as originally brought, sought to declare the provisions of G. S. 1947 Supp. 12-2001, as amended by House bill 223 (being chapter 119,

Laws of 1949) unconstitutional and void as applied to the business of plaintiff in Topeka, and asked for an injunction permanently enjoining defendant city from interfering with the conduct of its business by reason of its failure to apply for or obtain a franchise or other grant or privilege in accordance with and upon the terms and conditions specified in such statute. The action was later expanded into one for a declaratory judgment construing the statute in question, as amended, as the same would apply to a business such as plaintiff's.

The parties entered into a written stipulation of facts which, briefly summarized or quoted, shows the following background of the present controversy:

Plaintiff is a Delaware corporation, with its address and principal place of business in Kansas City, Mo., and is duly licensed and authorized to transact business as a foreign corporation and to sue and be sued in the state of Kansas. It is engaged in the manufacture and sale of bread and other bakery products, and in January, 1949, applied to defendant city for a license authorizing it to conduct a retail store for the sale of bakery products and for authority to deliver in the city such products by its trucks from its salesroom in Topeka. Concurrently with its application it paid a license fee of $500, receiving the city treasurer's receipt therefor, and was advised by the license collector that no additional license was necessary in order to operate its store or trucks to be used by it in the delivery of its products in the city.

In February, 1949, plaintiff remodeled a building in defendant city in which location it has been conducting a retail store for the sale of its products and from which place its delivery trucks operate over various routes in the city, selling and delivering bakery goods to its customers. It has filed its tax returns with the proper local authorities covering its stock of goods, trucks and other personal property.

Paragraphs 6 to 13, inclusive, of the stipulation of facts are as follows:

"6.

"Plaintiff now has in its employ in the conduct of its business in Topeka eighteen residents of the City, including a manager, an assistant manager, a saleswoman, and fifteen delivery-men operating its trucks.

"The plaintiff's bakery goods sold in Topeka are baked in its bakery in Kansas City, Missouri, and from there within a few hours after baking are delivered by truck to its warehouse and retail store room in Topeka and are there is (sic) part transferred to the counters and shelves in the retail store

for sale at the store room and in part transferred to the route trucks which start on their routes promptly after arrival of the bakery goods from Kansas City. Sales over the counter at Plaintiff's Topeka retail store are approximately equal in quantity to the sales made by one route truck.

"7.

"The plaintiff's trucks operating in Topeka are standard Chevrolet panel truck automobiles, length being 196 inches and weight of truck 3,425 pounds, having enclosed truck bodies neatly painted and bearing the name 'Manor Baking Company', the size and type of chassis being approximately the same as the ordinary type of pleasure or family automobile in use in Topeka.

"8.

"Each of plaintiff's trucks, after loading at the plaintiff's Topeka store room with bakery products, travels a specified route, all routes being located in residential districts. Upon these routes the plaintiff has established customers who rely upon the plaintiff for their regular supply of bread and other bakery products.

"9.

"The plaintiff has established sixteen routes throughout the City of Topeka. The average time it takes a driver to cover these routes is eight hours.

"10.

"Plaintiff's drivers in an effort to secure new customers, make uninvited and unsolicited calls at the homes of prospective customers along their route, to solicit their business; if the prospective customer advises the driver that he does not wish to become a customer, the driver does not again stop at that home.

"11.

"If a customer, at his door, requires an item which the driver does not have in his basket containing bakery products, but does have out in his truck, the driver will then go to the truck, secure the item and bring it back to the customer's door to sell it to him.

"12.

"Plaintiff's drivers or route men call tri-weekly at the doors of customers' residences with a basket containing wrapped bakery products taken from the supply in the truck, the customer selecting and purchasing at the door such of said articles as she desires. Some of the customers have standing orders for deliveries of particular articles on specified days. Most of the sales are made at residence doors, for cash. However, upon satisfactory credit rating being established, sales on credit are not infrequently made. Occasionally a housewife will call out to stop a driver and will go to the curb and make a purchase at the curb.

"13.

"Sales of ice and of milk and cream to the housewife at residence doors are regularly made in Topeka by drivers of trucks of ice companies and of dairy companies, the type of truck used and the routes followed being similar to those of the plaintiff."

House bill 223, heretofore referred to, having been passed by the 1949 session of the legislature and approved by the governor, was to become effective June 30, 1949. On June 6, 1949, counsel for plaintiff addressed a letter to the legal department of defendant city making inquiry concerning the city's position with reference to its being necessary for plaintiff to obtain a franchise under the statute in question in order to continue the operation of its business within the city.

Shortly thereafter, in a letter from the city attorney, counsel for plaintiff was advised that if the ordinance contemplated was adopted by the governing body of defendant plaintiff would be subjected to its prohibition and that in order to carry on its business it would be necessary to obtain a franchise, and that any contract entered into would necessarily be by ordinance and subject to all of the provisions set forth in House bill 223.

This action was then commenced.

In the court below no oral evidence was introduced and the case was submitted on the files and written stipulation of facts. For its findings of fact the court adopted the written stipulation of facts, and rendered the following conclusions of law:

"1. The provisions of House Bill 223, being now Chapter 119 of the Session Laws of 1949, if construed to require the plaintiff herein to obtain a franchise upon the conditions imposed therein, would violate the rights of the plaintiff as guaranteed by the due process clause of the Fourteenth Amendment of the Constitution of the United States.

"2. Judgment should be entered permanently enjoining the defendants, and each of them, and all persons acting by, through or under them, or any of them, from interfering in any manner with the conduct of the plaintiff's business by reason of its failure to apply for and obtain a franchise or other grant or privilege in accordance with and upon the terms and conditions specified in said statute.

"3. Judgment should be entered against the defendants for costs."

Judgment was entered in accordance with the foregoing conclusions. Defendant city's motion for a new trial being overruled, it has appealed, specifying as error each of the three conclusions of law rendered by the court.

Chapter 119, Laws of 1949, being quite lengthy, will not be quoted in full, but is incorporated herein by reference. The first paragraph of section 1 of the act reads:

"SECTION 1. Section 12-2001 of the General Statutes Supplement of 1947 is hereby amended to read as follows: Sec. 12-2001. The governing body of any city may permit any person, firm or corporation to manufacture, sell and

furnish artificial or natural gas light, and heat, electric light, water, power or heat, or steam heat to the inhabitants, and to build street railways, to be operated over and along or under the streets and public grounds of such city, and may permit the construction and operation of telegraph and telephone lines, and the laying of pipes, conduits, cables, and all appliances necessary for the construction and operation of gas and electric-light and steam-heat plants, and electric railways, or bus companies, and the laying of pipes for the operation of a water plant for the distribution or furnishing of water, over, under and along the streets and alleys of such city, *and may grant to any person, firm, corporation or partnership the right to use the streets in the carrying on of any business which is not prohibited by law wherein said business is primarily conducted on the streets of any city of the state of Kansas,* upon the express conditions hereinafter imposed, and not otherwise, in this act to wit:" (Italics ours.)

The italicized portion above quoted is the 1949 amendment. In all other respects the entire act is identical with G. S. 1947 Supp. 12-2001 and 12-2002.

In addition to the above, the act provides that all contracts granting any such original franchise, right or privilege, shall be by ordinance and not otherwise; that no contract, grant, right, privilege or franchise shall be extended for any longer period of time than twenty years from the date of such grant or extension; that the city may fix a reasonable schedule of maximum rates to be charged by the franchise-holder for the sale of its services; that the city may impose fixed charges as a condition for the granting of such franchise, which may consist of a percentage of the gross receipts derived from the service permitted by the franchise, with the duty on the part of the franchise-holder to report at six-month periods to the city all gross receipts collected during such period and to pay into the treasury of the city the percentage thereof fixed by the ordinance; and that such franchise grant is in no event to be effective until sixty days after the franchise ordinance has been published for three consecutive weeks, the franchise to be subject to annulment by vote of a majority of electors voting in a special election to be held at the expense of the franchise applicant in the event such special election is petitioned for during such sixty-day period by twenty percent of the legally qualified voters of the city who voted for mayor at the last preceding city election.

Plaintiff frankly concedes that such terms and conditions are valid and proper in *franchise* ordinances pertaining to *public utilities,* but that as applied to a business strictly private in nature, such as is contended we have here, would impose upon it such unreason-

able obligations and restrictions as to be unconstitutional and void. A major portion of the briefs of both parties is devoted to a discussion of this phase of the question, but, for our purposes and in order to reach a proper decision, we do not deem it necessary to go into the precise question in detail.

In numerous decisions of this court it has been uniformly held that G. S. 1947 Supp. 12-2001 (and its predecessors) has application only to *public utility franchises* and that it covers a sphere of municipal authority entirely separate and distinct from ordinances licensing and regulating private users of the streets. (*O'Neal v. Harrison*, 96 Kan. 339, 343, 150 Pac. 551, L. R. A. 1915F 1069; *State, ex rel., v. City of Coffeyville*, 138 Kan. 909, 912, 28 P. 2d 1032; *Peoples Taxicab Co. v. City of Wichita*, 140 Kan. 129, 137, 34 P. 2d 545, 95 A. L. R. 1218; *Home Cab Co. v. City of Wichita*, 140 Kan. 451, 36 P. 2d 1012; *City of Wichita v. Home Cab. Co.*, 141 Kan. 697, 700, 42 P. 2d 972.)

Such being the case, what then is the effect of the 1949 amendment? Both before and after (the amendment) subdivision seventh of the act reads:

"All contracts, grants, rights, privileges or franchises for the use of the streets and alleys of such city, not herein mentioned, shall be governed by all the provisions of this act, . . ."

In *State, ex rel., v. City of Coffeyville*, supra, in construing this provision, it was said:

"The state urges that subdivision *seventh* closes the door against all grants of use of streets except by ordinance.

"Subdivision *seventh* in effect declares that if the previous enumeration of grants for use of streets is not complete, other grants shall be subject to all the conditions attending grants for the enumerated purposes. That must necessarily mean if the conditions are appropriate. To be appropriate, the purpose must be of a public nature, and not administrative merely.

". . . Purchase of fuel is purely administrative business, use of the streets merely facilitated delivery, and to avoid absurdity it is necessary to hold that subdivision *seventh* operates in the same field as the remainder of the section, the field of public, governmental activity." (pp. 912, 913.)

We again quote the amendment, it being in the first paragraph of the act:

"and may grant to any person, firm, corporation or partnership the right to use the streets in the carrying on of any business which is not prohibited by law wherein said business is primarily conducted on the streets of any city of the state of Kansas."

The city contends that by virtue of the amendment the statute is

no longer limited in application to public utilities and that its scope is now clearly extended so as to include any business which is not prohibited by law.

On the other hand, plaintiff argues that the language of the amendment is no broader than subdivision seventh of the act, above quoted; that the amendment really added nothing, and that while the language of such provision (seventh) was *broad* enough to *require* that all rights and privileges for the use of the streets must be by ordinance and must be subject to all of the conditions named in the statute, the *sense* of such subdivision must, to avoid absurdity, be held to embrace only those persons or corporations engaged in *public utility* business.

And so we have this situation: If the 1949 amendment be held not to have added anything to the statute as it formerly existed, then there should be no interference with plaintiff's private business by reason of its failure to comply with a statute having application *only* to *public utilities*. On the other hand, if the city's contention, that by virtue of the amendment the statute is no longer limited in application to public utilities and that its language clearly extends the scope of the statute to include the power to grant the privilege of using the streets in conducting lawful private business such as plaintiff's, be correct, then we are at once confronted with the provision of section 16 of article 2 of the state constitution, which provides that:

"No bill shall contain more than one subject, which shall be clearly expressed in its title, . . ."

The title of the amended statute, chapter 119, Laws of 1949, reads:

"An Act relating to cities, and pertaining to franchises and to the granting thereof, amending sections 12-2001 and 12-2002 of the General Statutes Supplement of 1947, and repealing said original sections."

We find nothing in the title to suggest that with the passage of the bill there was combined in the one statute the old field of public utility franchises with a new field granting to cities the power to grant the privilege to use the streets in conducting any lawful private business, such as we have here. The amendment, if given the force and effect contended for by the city, clearly would be outside of and foreign to the title of the bill, thus rendering the act unconstitutional and void.

In either event plaintiff would be entitled to the relief prayed for and which was granted by the lower court, and its judgment is therefore affirmed.