No. 45,702

COMMUNITY ANTENNA TELEVISION OF WICHITA, INC., *Appellant,* v.
CITY OF WICHITA, KANSAS, a Municipal Corporation; THE BOARD
OF COMMISSIONERS Thereof: WILLIAM ANDERSON, Mayor; A. PRICE
WOODARD, WALT KEELER, CLARENCE VOLLMER, DONALD ENOCH
and RALPH EBERLY, City Clerk, City of Wichita, Kansas, *Appellees.*

(471 P. 2d 360)

Opinion filed June 13, 1970.

*Paul R. Kitch,* of Fleeson, Gooing, Coulson and Kitch, of Wichita, argued the cause, and Gerrit H. Wormhoudt, of Fleeson, Gooing, Coulson and Kitch, of Wichita, was with him on the brief for the appellant.

*H. E. Jones,* of Hershberger, Patterson, Jones and Thompson, of Wichita, argued the cause, and John Dekker, of Holmes, Darrah, Dekker, Mellor and Compton, of Wichita, was with him on the brief for the appellees.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from a judgment in a declaratory judgment action which was brought to have a municipal ordinance governing the issuance of franchises for community antenna television systems (hereinafter referred to as CATV) declared null and void.

A statement of the general facts, before we reach the specific provisions of the ordinance, may be helpful.

A CATV system consists of a high receiving tower located on high ground. From this receiving point coaxial cables are distributed through the city. The physical plant is quite similar to a telephone plant and the connections to the homes are not unlike telephone drops entering the homes. The advantage of the system is that more stations can be reached by the high antenna. Every television viewer could see the programs transmitted by distant stations if he were to erect an antenna of the same height but the cost would, of course, be prohibitive.

Most CATV service is provided through cables either leased from the local telephone company or owned by the CATV system and strung on utility poles.

The CATV business is an industry that is seeing tremendous growth. The first commercial CATV installation was established in 1950. Today more than 1800 systems are operating in the United States of which more than twenty are operating in Kansas.

It is conceded that CATV systems are engaged in interstate communication so as to be subject to regulation by the Federal Communications Commission. (See *United States v. Southwestern Cable Co.*, 392 U. S. 157, 20 L. ed. 2d 1008, 88 S. Ct. 1994.)

On September 20, 1966, the city commission of the city of Wichita, Kansas adopted ordinance No. 28-882 which is involved in this controversy. It dictates the terms and conditions under which a CATV system may be conducted in the city of Wichita.

The plaintiff, the Community Antenna Television of Wichita, Inc., proposes to operate its system through lines leased from Southwestern Bell Telephone Company although it is, if necessary, ready to use its own cables strung on public utility company poles.

The ordinance contained a form of application for franchise which required a detailed statement of all matters specified in the ordinance, and stated:

"Upon consideration of any such application, the Commission may refuse to grant the requested franchise or the Commission may, by ordinance, grant a franchise for a CATV system to any such applicant as may appear from said application to be in its opinion best qualified to render proper and efficient CATV service to television viewers and subscribers in the City. The Commission's decision in the matter shall be final. If favorably considered, the application submitted shall constitute and form part of the franchise as granted."

In connection with the ordinance there were also directions for applying for a franchise which stated in part:

"All applications shall be forwarded to the City Clerk and shall be sealed and unopened. Applications must be filed with the City Clerk on or before March 1, 1968. [Extended to November 18, 1968.] Said applications will be processed by the Board of Bids and Contracts, and forwarded to the City Commission with comments of said Board of Bids and Contracts. All applications found to be in conformance with the ordinance and these directions shall be forwarded to the City Commission, who shall make the final determination. If the application is incomplete or not in substantial conformance to the ordinance and directions, then the Board of Bids and Contracts will not forward said proposal to the Board of City Commissioners, but will reject said proposal."

Four bidders sought the Wichita CATV franchise from the Board of Commissioners of the city of Wichita. The plaintiff was not among them. Each bidder proposed to use public utility poles to carry the bidder's own cable. The bidders made cash offers to the city ranging from $25,000 to $100,000 and, in addition, each bidder proposed to pay to the city percentages of its annual revenue with the minimum payments ranging from $8,000 (subject to the $25,000 penalty set forth in the ordinance) to $77,500 and the maximum payments, as projected, ranging from $153,600 to $386,500.

It was stated by plaintiff in oral argument, and the statement was not refuted by the defendant, that the franchise was granted to the highest bidder and all other applications were refused.

We now come to the provisions of the ordinance. The ordinance under attack consists of some twenty-one printed pages and space should not be used for its reproduction in full.

The ordinance devotes considerable space to provisions for the regulation of the use of streets and alleys, to which no objection is made, but commingled therewith are provisions attempting to regulate the conduct of the business itself. Some of such provisions are summarized:

1. A franchise is not to be granted when, in the opinion of the commission, it is not in the public interest.

2. A schedule of proposed rates and charges must be approved by the city commission and no change may be made in the rates and charges without the prior approval of the commission expressed by resolution.

3. The ordinance controls the duration and renewal of a CATV system's right to do business; its internal records and books and the transferability of its right to do business.

4. The time when a system is to commence business is controlled.

5. A system is required to serve all customers desiring to be attached.

6. The location of a CATV system's office is controlled.

7. All of a system's operational standards are controlled, including band equipment, signal level, signal-to-noise ratio, hum modulation of the picture signal, the VSWR of components used, etc.

8. The ordinance would regulate the signals brought into the city and the channels to be used.

9. The city commission may grant a franchise for a CATV system to such applicant as appears, in its opinion, to be best qualified.

10. A franchise payment is required of a sum equal to a percentage of the gross annual receipts of the grantee.

11. The ordinance required the furnishing, free of charge, of outside connections and services to all hospitals, public and parochial schools located within the city and to municipal buildings.

The validity of the ordinance was challenged by a declaratory judgment action. The trial court concluded in part:

"The franchise payment called for under Ordinance No. 28-882-Sec 5-insofar as the same pertains to a payment to the city of a sum equal to a percentage of the gross annual receipts of the grantee bears no reasonable relationship to expense and inconvenience to be occasioned by the city but is purely a revenue measure.

"Further, that the requirement of Ordinance 28-882-Sec. 15 (*i*), calling for the furnishing, free of charge, outside connections and services to all hospitals, public and parochial schools located within the City, and to Municipal Buildings bears no reasonable relationship to the expense and inconvenience to be occasioned by the city."

The trial court further concluded that—

"The ordinance is severable and by reason thereof all portions of said ordinance not specifically declared to be unconstitutional and void are valid and existing."

The plaintiff has appealed.

The appellant argues that a municipality may regulate a private business enterprise only pursuant to the reasonable nondiscriminatory exercise of its police power, and the ordinance in question is arbitrary, discriminatory, unreasonable and therefore void.

The appellee contends that the police power of the city to regulate the use of streets and alleys justifies the ordinance.

The parties do not appear to disagree as to the general principles of law by which the provisions of the ordinance must be measured. We will next consider the applicable law.

We first note that the trial court concluded:

"Community antenna television service is a commercial enterprise of non-public utility character."

Both parties have accepted and adopted the conclusion. We therefore accept the statement as conclusive in this particular case without consideration or determination of the question.

The trial court also concluded:

"The Constitution of the State of Kansas, Article 12, Sec. 5, commonly known as the Home Rule Amendment authorizes the City of Wichita to carry out municipal functions without statutory authorization where that functoin is not restricted by the statutes of the State of Kansas.

"By virtue of the authority of the Home Rule Amendment the City of Wichita may enact an ordinance to regulate franchises and control community antenna television service for the protection of the public welfare and for the regulation and use of the public streets and ways."

The appellee also suggests:

". . . For the reasons previously discussed in this brief, appellee City had the power to enact the Ordinance by virtue of its police powers, as further supported by the 'Home Rule Amendment,' and that Ordinance was a reasonable exercise of those powers."

The home rule amendment may have broadened the powers of municipalities but it did not extend to them the power to enact unreasonable ordinances under the guise of police power.

In *Delight Wholesale Co. v. City of Overland Park,* 203 Kan. 99, 453 P. 2d 82, we stated:

"It is conceded by appellant that since the adoption of the Home Rule Amendment (Art. 12, Sec. 5, Kansas Constitution) the cities have broad powers of self determination. It has always been the policy of this state to confer on cities the power to pass ordinances to protect the safety, health and general welfare of its citizens.

. . . . . . . . . . . . . . . . .

"However, while the police power is wide in its scope and gives a governmental body broad power to enact laws to promote the health, morals, security and welfare of the people, and further, a large discretion is vested in it to determine for itself what is deleterious to health, morals or is inimical to public welfare, it cannot under the guise of the police power enact unreasonable and oppressive legislation or that which is in violation of the fundamental law. (*Little v. Smith,* 124 Kan. 237, 257 Pac. 959; *Gilbert v. Mathews,* 186 Kan. 672, 677, 352 P. 2d 58.)" (P. 102.)

Although the issue is not stressed, the appellee does mention its general police power to pass ordinances promoting the public health and general welfare of the community.

We dispose of the issue, if there is one, with the statement that we find nothing in the business of a CATV system which would reflect on public health or morals. What the system brings into the home is first broadcasted by an authorized broadcasting company.

In *McCulley v. City of Wichita,* 151 Kan. 214, 98 P. 2d 192, we held:

"The oppressive and discriminatory character and effect of an ordinance on certain businesses is not cured by an ordinance which unreasonably and arbitrarily classifies foods, rather than dealers in foods, where the identity of businesses favored and businesses discriminated against is as readily ascertainable from the classification of foods as though the business actually had been named in the ordinance.

"A municipality has no authority, under its police power, to regulate arbitrarily and unreasonably the hours of private business, conducted in a reasonable manner, under the guise of promoting the public health or general welfare of the community." (Syl. ¶¶ 3 and 4.)

Again in *Gilbert v. Mathews,* 186 Kan. 672, 352 P. 2d 58, at page 676 of the opinion:

"While there are no Kansas cases specifically in point, it is universally recognized that the business of an auctioneer and of selling merchandise at auction is a legitimate business which cannot be prohibited directly or indirectly. However, the right to sell at auction is not absolute but may be withheld unless there is compliance with reasonable regulations. The business is affected with a public interest and is subject to reasonable legislative restriction and regulation to prevent abuses and frauds. Requirements for the licensing of auctioneers and auctions as well as other regulations which are reasonable and not wholly arbitrary have long been upheld. The rgiht to regulate and license the business does not, however, include the right to prohibit it directly or, in effect, to adopt unreasonable and unfair regulations, or such regulations as would be oppressive or highly injurious to the business. (7 C. J. S., Auctions and Auctioneers, § 2, p. 1241; 5 Am. Jur., Auctions, §§ 3, 4 and 7, pp. 447, 448 and 450; and Annotations, 31 A. L. R. 299, 39 A. L. R. 773, 111 A. L. R. 473.)"

We must conclude that if the ordinance is to be sustained as a valid exercise of the police power, it must be in the regulation of the use and management of the public streets.

We had this same question before us in *Watson v. City of Topeka,* 194 Kan. 585, 400 P. 2d 689, and stated in the opinion on page 589:

"Before the ordinance may be sustained as a legitimate and valid exercise of the police power, it must bear a rational relationship to the rightful regulation of the use and management of the city streets. In *State v. Consumers Warehouse Market,* 183 Kan. 502, 329 P. 2d 638, we discussed the constitutional requirements of legislation enacted under the police power and, after holding that the purpose of the legislation there being considered fell within the police power of the state, we said:

" 'Notwithstanding the conclusion just announced, there still remains for determination whether the means chosen by the legislature are reasonably designed to accomplish the purpose of the Act, *i. e.,* are its terms arbitrary, discriminatory, or demonstrably irrelevant to the legislative policy? This is the

test of due process in the exercise of police power announced in *Nebbia v. New York*, [291 U. S. 502, 78 L. Ed. 940, 54 S. Ct. 505] . . .' (p. 508.)"

We do not believe that the requirements and provisions in the ordinance heretofore summarized have any rational relationship to the use and rightful regulation of the city streets. They deal more with the management of the internal affairs of a CATV system which for our review here must be considered as a commercial enterprise.

We are also of the opinion that the ordinance puts it in the power of the city commission to grant or refuse a franchise at will. It assumes to clothe such officers with arbitrary power to be exercised merely at their will or caprice. It would appear that the city commission has chosen to so exercise such power because of the first four applicants a franchise was granted to the highest bidder and the applications of the other three were denied.

In *Hudson Properties, Inc. v. City of Westwood*, 181 Kan. 320, 310 P. 2d 936, we held invalid an ordinance on this ground and stated:

"This ordinance is invalid because it fails to establish a uniform standard for its application, in that 'the Governing Body' is made the final arbiter of property rights. This is an attempt to confer arbitrary power on the governing body of the city and is void. We held in *Smith v. Hosford*, 106 Kan. 363, Syl. ¶ 2, 187 Pac. 685:

" 'An ordinance which puts it in the power of the officers of a city to grant a permit to build a garage, or to refuse such a permit at will, is unconstitutional and void, because it assumes to clothe such officers with arbitrary power to be exercised merely at their will or caprice, whether they are disposed so to exercise it or not.' " (p. 321.)

We must also agree with the trial court that the provision in the ordinance requiring the payment of a percentage of the income as a franchise privilege and the provision requiring free service to all hospitals, public and parochial schools located within the city and to municipal buildings are unreasonable and void. The measure of the charge and the cost of the free services is not reasonably apportioned to the business carried on measured by the expense to the city in supervising the use of the streets by a CATV system.

We are forced to agree with the appellant's suggestion that the ordinance attempts to force those desiring a CATV system franchise, to subject themselves to regulation as a public utility and be subject to criminal prosecution for noncompliance.

Those wishing to review cases from other states holding similar ordinances invalid or inapplicable should see *KAOK-CATV, Inc.*

*v. Louisiana Cable T. V., Inc.,* 195 So. 2d 297; *City of Waterville v. Bartell Telephone TV Systems,* 233 A. 2d 711; *Nugent v. City of East Providence,* 238 A. 2d 758; *Greater Fremont, Inc. v. City of Fremont,* 302 F. Supp. 652; *TV Pix, Inc. v. Taylor,* 304 F. Supp. 459. See, also, *Illinois Broadcasting Company v. City of Decatur,* 96 Ill. App. 2d 454, 238 N. E. 2d 261, where the court held many of the conditions of the ordinance could not be exacted but might be agreed to not being against public policy.

Although many provisions of the ordinance are proper as regulation of the streets, they are so commingled with the unlawful exactions that they are not severable and the entire ordinance must fall.

As what is said leaves the city of Wichita without an ordinance regulating CATV service, a discussion of the other questions raised by appellant would be academic.

The judgment is reversed with directions to the trial court to enter a declaratory judgment holding ordinance No. 28-882 void and unenforceable, and permanently enjoining the enforcement thereof.

APPROVED BY THE COURT.