No. 47,772

THE CITY OF LIBERAL, a Municipal Corporation, *Appellant*, v. TELE-
PROMPTER CABLE SERVICE, INC., a Division of Teleprompter Cor-
poration, *Appellee*.

(544 P. 2d 330)

Opinion
filed December 13, 1975.

*Gene H. Sharp*, of Liberal, argued the cause, and *Michael P. Dreiling*, of
Liberal, was with him on the brief for the appellant.

*Ronald M. Gott*, of Gott, Hope, Gott and Young, P. A., of Wichita, argued
the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This injunction action was brought by a city to
determine its right to regulate rates charged by a cable television
company for services to subscribers under an existing franchise.
The trial court held the city lacked this authority and it has ap-
pealed.

The facts in the case are stipulated. By ordinance No. 1499,
enacted February 21, 1956, the city of Liberal granted a franchise
to TV Cable, Inc., to provide cable television services within the
city for a period of twenty years. In 1960 TV Cable, Inc., assigned
its rights under the franchise to appellee Teleprompter Cable Ser-
vice, Inc. The ordinance granting the franchise contains no schedule
of rates for cable TV services. Appellee has charged its subscribers

$8.00 per month for its services, except for those who originally paid a $150.00 connection fee who have always been charged $5.00 per month. Several multiple-unit subscribers pay special rates agreed to by them and appellee.

Prior to August 1, 1974, appellee made public announcement of its decision to raise its service rates to regular subscribers from $8.00 to $8.95 per month, effective August 1, 1974. Appellee made no application to the city for permission to raise its rates. At no time prior to August 1, 1974, had the city ever requested filing of a schedule of rates or charges from appellee.

The city objected to the proposed rate. It investigated appellee's financial condition and rate of return and, as a result, on October 8, 1974, adopted ordinance No. 2094, which established maximum rates to be charged for appellee's various services to its subscribers. The crux of the controversy appears to be that this later ordinance fixed the maximum rate to be charged for monthly services to residences and businesses (with certain exceptions as to the latter) at $8.00 per month.

After this ordinance was passed appellee announced its intention to challenge the legality of the ordinance so that it might continue charging the higher rates to its customers. The city, however, got to the courthouse first with this suit to enjoin appellee from charging any rate higher than that authorized by the ordinance. After some preliminary legal maneuvering which need not be noticed, the trial court held a hearing and ruled that the city had no authority to regulate the rates appellee charged for its services and that ordinance No. 2094 was void. The city has brought the matter here for review.

Two groups of statutes contained in article 20 of chapter 12 of our laws are brought into play by the contentions of the parties. The first is K. S. A. 12-2001, enacted in 1945 and last amended in 1953. It authorizes a city to grant franchises to private persons to supply certain services within the city and the right to use the streets, alleys and other public grounds in establishing and maintaining its facilities in such supply. The furnishing of gas, light, heat, steam, water and electric power and the operation of street railways, telegraph and telephone lines, electric railways and bus companies are the services specifically mentioned. This section also provides that the city may grant to any person the right to use the streets in the carrying on of any legal business which is primarily conducted on city streets. Paragraph *Fourth* of K. S. A. 12-2001

provides that "The governing body of any city, at all times during the existence of any such contract, grant, privilege, or franchise, shall have the right by ordinance to fix a reasonable schedule of maximum rates to be charged such city and the inhabitants thereof . . ." for the services to be supplied under the franchise.

At this point it may be noted that in 1950 in *Manor Baking Co. v. City of Topeka,* 170 Kan. 292, 225 P. 2d 89, this court held that 12-2001 has application only to public utility franchises. Also, in 1970 in *Community Antenna TV of Wichita, Inc. v. City of Wichita,* 205 Kan. 537, 471 P. 2d 360, 41 ALR 3d 374, this court for the first time considered a city's authority in the field of regulation of cable TV service within the city. Our ruling there, invalidating a particular ordinance (later receded from upon the case's second appearance in this court) was premised upon the parties' agreement, accepted by the trial court, that the furnishing of such service was "a commercial enterprise of nonpublic utility character".

Thereafter, in 1972, manifestly in response to the problems posed for cities in their efforts to regulate cable TV within their borders (see *Capitol Cable, Inc. v. City of Topeka,* 209 Kan. 152, 495 P. 2d 885, and *Community Antenna TV of Wichita v. City of Wichita,* 209 Kan. 191, 495 P. 2d 939) the second group of statutes with which we are concerned, was enacted (Laws 1972, Chap. 49). Several of these provisos should be noted. K. S. A. 1974 Supp. 12-2006 provides:

"*Cable television service; regulation.* The furnishing of cable television service by means of facilities in place in the public ways, streets and alleys is hereby declared to be a private business affected with such a public interest by reason of its use of the public ways, alleys and streets so as to require that it be reasonably regulated by cities. Every city is hereby authorized and empowered by ordinance to permit or prohibit the operation of all businesses furnishing cable television service within its corporate limits. Each city shall supervise and regulate all cable television service businesses operating within its corporate limits so far as may be necessary to prevent such operation and service from having detrimental consequences to the public interest, and for this purpose may promulgate and enforce such reasonable rules and regulations as it may deem necessary with reference to commencement of operation, territory of operation, the extension of service equitably to all parts of the franchise area, abandonment of facilities, elimination of unjust discrimination among subscribers, financial responsibility, insurance covering personal injury and property damage, safety of equipment, use of streets, alleys, dedicated easements and other public places, and reasonable grounds for forfeiture of franchise rights."

K. S. A. 1974 Supp. 12-2007 makes it unlawful for any person to

use public property within a city in connection with the construction or maintenance of a cable TV system without first obtaining from the city a franchise authorizing that use under such reasonable conditions as the circumstances may require.

K. S. A. 1974 Supp. 12-2008 provides:

"*Rates to subscribers.* Every applicant for a franchise shall, upon request of the city, file with the city a schedule of its proposed rates and charges for its proposed services. Such rates and charges may be established as maximum rates for such services by the original franchise and if so established may not be exceeded without the approval of the governing body of the city."

And K. S. A. 1974 Supp. 12-2012 states:

"*Existing systems and services.* All ordinances and existing franchises purporting to authorize persons or entities to provide cable television service in said cities shall hereinafter be deemed to be authorized and operative under the provisions of this act."

As already indicated, ordinance No. 1499, enacted by appellant in 1956, contains no schedule of rates to be charged by the franchise holder nor does it contain any proviso that the city may regulate or fix those rates. For present purposes the ordinance merely provides that the company may use the city streets, etc., for a period of twenty years in operating a cable TV system, for which privilege it is to pay certain compensation annually to the city. Section 8 of the ordinance further provides:

"This franchise is granted under and in conformity with the provisions of Article 20 of Chapter 12 of the General Statutes of Kansas and acts amendatory thereof and is subject to all the conditions, limitations and restrictions provided for therein."

Essentially, the trial court held that prior to the 1972 enactment of 12-2006 appellee, having operated under the franchise issued it, would have been estopped to deny the city's authority under K. S. A. 12-2001 *Fourth* to regulate its rates, but thereafter the legislature had not provided such authority under existing franchises and therefore the attempt to regulate rates as provided in the 1974 ordinance was void. We think the approach taken has led to an incorrect conclusion.

First of all, it is generally held that a franchise is the subject of a contract between the grantor and grantee, and in fact constitutes a contract when the requisite element of consideration is present (36 Am. Jur. 2d, Franchises, § 6). Here the franchise was accepted and acted upon by both parties for more than eighteen years. Neither party has sought to invalidate that agreement. True, it

says nothing about rates to be charged or the city's right to regulate them. It does, however, state it is subject to all the conditions, limitations and restrictions provided for in K. S. A. 12-2001, paragraph *Fourth* of which states that the city "at all times during the existence of any such contract, grant, privilege, or franchise" shall have the right to fix reasonable rates to be charged. We think the holding in *Manor Baking* is no impediment to the viability of this proviso in the parties' agreement. In that case a city unilaterally sought by virtue of that which essentially is now K. S. A. 12-2001, to regulate the manner in which a street vending operation was carried on. The city's attempt was resisted by the company to be regulated, with the result already noted that this statute was held to apply only to public utilities. Here, in the conduct of their affairs, the parties bilaterally and voluntarily brought themselves within the statute's orbit. For its part a city has always had, and still has, authority to exercise reasonable police power over its streets, alleys and other property, and appellee's predecessor was free to contract as it chose. We think this a sufficient answer to appellee's argument that the city had no authority under the original ordinance to regulate cable TV rates. The failure of that ordinance to state expressly that the city has no authority to regulate rates does not vitiate that right.

Appellee further asserts the new ordinance establishing maximum rates is void because under K. S. A. 1974 Supp. 12-2008 there is no duty upon a franchise applicant to set out its proposed rates and charges until there is a "request of the city" and the city therefore has no authority to fix a schedule of maximum charges. In this connection appellee says that K. S. A. 1974 Supp. 12-2012 requires that all prior franchises must be operative under the provisions of the new cable TV act. We do not so narrowly interpret 12-2012 as to reach the result asserted by appellee—that appellant may not regulate cable TV rates as it sought to do in ordinance No. 2094. That statute provides that all ordinances and franchises purporting to authorize cable TV services shall hereinafter be deemed to be *authorized* and operative under the new enactment. As we view the background and history of cable TV regulation in Kansas, legislative intent in the enactment of 12-2012 was simply to validate a city's action, where it was reasonable, purporting to grant a franchise under prior law. Our interpretation, as applicable here, is this: It is a validating statute, to whatever extent is needed, giving legal force and effect to a city's prior enactment of a reasonable ordinance

purporting to authorize persons to provide cable television service within the city.

The reasonableness of the rates established by appellant is not in issue here and the result is that under the particular circumstances the city had authority on October 8, 1974, to regulate appellee's rates and to enact ordinance No. 2094 as it did.

The judgment is reversed and the cause remanded with directions to grant the relief requested by appellant.

APPROVED BY THE COURT.